[Cite as *State v. Daniels*, 2019-Ohio-3208.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2018CA00155 |
| WILLIE CARL DANIELS | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |


CHARACTER OF PROCEEDING:     Criminal appeal from the Stark County
                             Court of Common Pleas, Case No.
                             2018CR0551



JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      August 5, 2019



APPEARANCES:

For Plaintiff-Appellee                 For Defendant-Appellant

JOHN D. FERRERO                        WAYNE GRAHAM, JR.
BY: KRISTINE BEARD                     4450 Belden Village St. N.W.
Stark County Prosecutor's Office       Suite 703
110 Central Plaza South                Canton, OH 44718
Canton, OH  44702

*Gwin, P.J.*

**{¶1}** Appellant Willie Carl Daniels ["Daniels"] appeals his convictions and sentences after a jury trial in the Stark County Court of Common Pleas.

*Facts and Procedural History*

**{¶2}** On March 15, 2018, Icies Fragasse, (Icies) was preparing to move into her first apartment. At around 6:00 P.M. Icies's family and friend's arrived to help her paint. The friends and family present that evening included Icies's mother, Gretchen Fragasse (Gretchen), Icies's brother, Micha Fragasse (Micha), Micha's friend, John Sankey aka Mills (John), and Icies's aunt, Jennifer Stone (Jennifer).

**{¶3}** While Gretchen and Icies were painting the living room, they heard loud music and arguing in the alley next to the building. Gretchen looked out the window, and saw a woman in a white SUV and a man nearby. Later, Gretchen saw the man carry a basket of laundry back to the truck. Icies and Gretchen did not know the couple. Minding their own business, they went back to painting.

**{¶4}** Gretchen testified that as she was painting, a man kicked in the front door. Micha approached the man and said, "who are you?" "What are you doing" "Get out of my sister's house." The man grabbed Micha and Micha struggled to push the man out the door. John attempted to help Micha in the struggle. As the two men struggled to push the man out of the apartment, Gretchen heard three gun shots-"pop, pop, pop." Not realizing she had been shot in the leg, Gretchen ran toward the door to help her son, Micha. When Gretchen reached the door, she looked right at the man doing the shooting. She recognized him as the man in the alley by the white SUV. Micha crawled back into

the house saying, "I was shot mom, it's burning, I'm thirsty." Gretchen saw a bullet wound in Micha's stomach and blood pouring through Micha's hands.

{¶5} Icies ran into the kitchen and saw the man calmly walk past the front door and briefly look inside the apartment. Icies then saw John in the alleyway. She testified that John's shoulder was bleeding and he could not use his arm. She saw John collapse in a puddle of his own blood. Icies testified that it looked like blood was "tumbling out of his [John's] body." Icies testified that Micha was bleeding as much as John and that her mother's leg was bleeding. Jennifer called the police who arrived quickly.

{¶6} Christopher McCartney (McCartney), an employee of Timken Steel, was working that evening and was driving near 15th Street. McCartney testified that he heard gunshots and saw a white SUV speeding away from the area. He followed the vehicle as far as 18th Street, was unable to get the license plate number, but called the company to report the incident.

{¶7} Canton Patrol Officers Krug, Lott and Slone, and Canton Detective Mongold were dispatched to the shooting scene. Officer Krug observed John laying in the alley, near the apartment, in a pool of blood. Officer Krug briefly spoke with John and continued to the residence. Inside the residence, he observed Micha who had been shot in the stomach, spoke with Gretchen and observed that she had puncture wounds to her leg and foot. Body cam video from the responding officers depicting the scene was played for the jury.

{¶8} Canton Police Officer Randy Weirich, assigned to the crime scene unit, arrived to collect evidence, take photographs, and process the scene. The photographs depicted the condition of the apartment including the damage to the front door, large

amounts of blood, and tire tracks in the alley directly behind the building. Officer Weirich did not recover any bullets or shell casings at the scene. Officer Weirich then went to the hospital and took photographs of John and Gretchen's injuries. Micha was unavailable. Officer Weirich testified that Gretchen and John's injuries were consistent with gunshot wounds, likely from a large caliber handgun. No firearm was recovered.

{¶9} Officer Slone spoke with Gretchen and learned that the suspect had been driving a white SUV. After speaking with nearby residents he learned that the newest resident in the building was a Willie Daniels, I, Daniels's father. Officer Slone subsequently contacted the BMV and requested a list of white SUVs in Stark County. The BMV information identified Aaron Smith as the owner of a white SUV in Stark County. Officer Slone also learned that Daniels had been issued two traffic citations while he was driving Aaron Smith's white SUV and that the vehicle had temporary tags.

{¶10} Both Detective Mongold and Officer Slone identified Daniels as the suspect. Following the police department's procedures and protocols, Detective Mongold used the information to prepare a photo line-up with Daniels' picture to be shown to Gretchen and Icies.

{¶11} Meanwhile, using CJIS, Officer Slone located a resident address for Willie Daniels. The next day, officers went to the residence to see if they could find the white SUV. While at the residence officers observed a white GMC Jimmy with temporary tags pull up. They observed Daniels was in the driver's seat and a white female was in the passenger's seat. Daniels was arrested for the shooting without incident.

{¶12} Detective Mongold prepared the photo line-ups for Gretchen and Icies. Detective Mongold testified that an officer unfamiliar with the investigation oversaw the

photo-line up reviews. He also testified that witnesses are asked to rank photos in a range from one to five, one being least likely to be the suspect and five being a positive identification. After observing the random photos, Icies positively identified Daniels as a number five as the perpetrator. Gretchen ranked two photos as a four. One of the photos ranked as a four was Daniels. At trial, Icies positively identified Daniels as the person who forced entry into the home, struggled with Micha and John and fired the gunshots.

{¶13} Daniels was indicted for Aggravated Burglary with a Firearm Specification in violation of R.C. 2911.11(A)(1) and/or (A)(2) [F1]; Three Counts of Felonious Assault with Firearm Specification in violation of R.C.2903.11(A)(1) and/or (A)(2) [F2]; and, Having Weapons Under Disability in violation of R.C. 2923.13(A)(3) [F3]. Daniels pled not guilty at the arraignment.

{¶14} The matter proceeded to jury trial. Daniels stipulated to having a prior felony offense. The jury found Daniels guilty of all charges, with the exception of the Firearm Specification associated with Count One (Aggravated Burglary). [2T. at 435]. Daniels was sentenced to a 12-year aggregate sentence.

*Assignment of Error*

{¶15} Daniels raises one assignment of error,

{¶16} "I. APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

*Law and Analysis*

{¶17} In his first assignment of error, Daniels argues that there was insufficient evidence to convict him, and further Daniels contends that the jury's findings are against the manifest weight of the evidence. Specifically, Daniels argues that, 1). There was no

evidence presented during his jury trial that the shooter entered into Icies apartment; 2). The eyewitness testimony was weak and arguably nonexistent and 3). No one actually put a gun in Daniels's hand.  [Appellant's Brief at 5].

**STANDARD OF APPELLATE REVIEW.**

*A. Sufficiency of the Evidence.*

{¶18}  The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...."  This right, in conjunction with the Due Process Clause, requires that each of the material elements of a crime be proved to a jury beyond a reasonable doubt.  *Alleyne v. United States*, 570 U.S. 99, 104, 133 S.Ct. 2151, 2156, 186 L.Ed.2d 314 (2013); *Hurst v. Florida*, 136 S.Ct. 616, 621, 193 L.Ed.2d 504 (2016).  The test for the sufficiency of the evidence involves a question of law for resolution by the appellate court.  *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶ 30.  "This naturally entails a review of the elements of the charged offense and a review of the state's evidence."  *State v. Richardson,* 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶ 13.

{¶19}  When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed.  *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *Walker*, at ¶ 30.  "The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *Jenks* at paragraph two of the syllabus.  *State v. Poutney*, 153 Ohio St.3d 474, 2018-Ohio-22, 97 N.E.3d 478, ¶ 19.  Thus, "on review for evidentiary sufficiency we do not second-guess the jury's credibility determinations;

rather, we ask whether, 'if believed, [the evidence] would convince the average mind of the defendant's guilt beyond a reasonable doubt.' " *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001), *quoting Jenks* at paragraph two of the syllabus (emphasis added); *Walker* at ¶ 31. We will not "disturb a verdict on appeal on sufficiency grounds unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.' " *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 94, *quoting State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997); *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶ 74.

**ISSUE FOR APPEAL**

***Whether, after viewing the evidence in the light most favorable to the prosecution, the evidence, "if believed, would convince the average mind of the defendant's guilt on each element of the crimes beyond a reasonable doubt."***

1. Daniels first argues that there is insufficient evidence to prove beyond a reasonable doubt the crime of Aggravated Burglary because the evidence fails to prove that the shooter entered inside Icies's apartment.

{¶20} R.C. 2911.11(A) and (A)(2), sets forth the elements of aggravated burglary as follows:

(A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:

(1) The offender inflicts, or attempts or threatens to inflict physical harm on another;

(2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control.

{¶21} In the case at bar, Gretchen testified that she did not see the individual kick in the front door of the apartment. 2T. at 169. She further testified that her son proceeded to go to the door and attempted to make the individual get out of the apartment. 2T. at 168-169; 182; 187. She testified further that her son and John "were pushing him outside…" 2T. at 189.

{¶22} Icies testified that the individual who kicked in the door "stood there for a second" and then went after her brother. 2T. at 209. She testified that the individual grabbed Micha, "they went outside, and they were kind of tumbling in front of the neighbor's door." 2T. at 209. Icies testified that the struggle occurred inside the apartment as her brother and John attempted to force the individual outside. 2T. at 211. The struggle continued outside of the apartment. 2T. at 211-212.

{¶23} As soon as the individual entered the apartment with a deadly weapon with the intent to commit a criminal offense the aggravated burglary was complete. *State v. Fears,* 86 Ohio St.3d 329, 344, 1999-Ohio-111, 715 N.E.2d 136.

2. Daniels next argues that that there is insufficient evidence to prove beyond a reasonable doubt that he was the person that entered the apartment; 3. Daniels also argues that that there is insufficient evidence to prove beyond a reasonable doubt that he was the person that shot Gretchen, Micha and John.

**{¶24}** In *State v. Tate*, the Ohio Supreme Court recognized,

> Every criminal prosecution requires proof that the person accused of the crime is the person who committed the crime. This truism is reflected in the state's constitutional burden to prove the guilt of "the accused" beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Like any fact, the state can prove the identity of the accused by "circumstantial or direct" evidence. *State v. Jenks*, 61 Ohio St.3d 259, 272–273, 574 N.E.2d 492 (1991).

140 Ohio St.3d 442, 2014-Ohio-3667, 19 N.E.3d 888, ¶15. A witness need not physically point out the defendant in the courtroom as long as there is sufficient direct or circumstantial evidence proving that the defendant was the perpetrator. *See Jenks*, 61 Ohio St.3d at 272–273, 574 N.E.2d 492; *United States v. Boyd*, 447 Fed.Appx. 684, 690 (6th Cir.2011) (collecting examples of when "in-court identification is not required"). *Tate*, 140 Ohio St.3d442, 2014-Ohio-3667, 19 N.E.3d 888, ¶ 19.

**{¶25}** Daniels does not dispute that Gretchen, Micha and John were shot.

**{¶26}** In the case at bar, Gretchen testified that she heard a loud argument occurring outside the apartment. She looked out a window and observed a woman inside a white SUV and a man standing near the SUV arguing. 2T. at 166; 185. She observed the man carry a basket out to the SUV. Id. She observed the man's face as she looked out the window. 2T. at 170. She testified that she was certain this was the same man that she saw struggling with her son and John, "And then whenever he shot whenever it happened, I looked right at his face because I was proceeding to run out after my son."

2T. at 170.  Gretchen identified Daniels from a photo array as one of two possible suspects.  2T. at 177 – 178.

{¶27} Icies testified that she heard a man and a woman arguing outside the apartment.  2T. at 208.  Icies saw the individual who kicked in the apartment door.  2T. at 210-211.  Icies testified that her brother and John struggled with Daniels.  She testified that the individual grabbed Micha, "they went outside, and they were kind of tumbling in front of the neighbor's door."  2T. at 209.  Icies testified that the struggle occurred inside the apartment as the brother attempted to force the individual outside.  2T. at 211.  The struggle continued outside of the apartment.  2T. at 211-212.  She heard three gunshots and observed the injuries to Micha, John and Gretchen.  Icies further testified that the individual who had forced his way into her apartment fought with and shot her family members walked past her door and looked inside the apartment after the shootings had occurred.  2T. at 213.  Icies selected Daniels picture from a photo array.  2T. at 216. Icies was "a hundred per cent confident" of her selection.  Id. Icies identified Daniels in the courtroom as the person she had seen on March 15, 2018 breaking into the apartment and fighting with her brother and John.

{¶28} If the State relies on circumstantial evidence to prove an essential element of an offense, it is not necessary for "'such evidence to be irreconcilable with any reason-able theory of innocence in order to support a conviction.'" *State v. Jenks*, 61 Ohio St. 3d 259, 272, 574 N.E. 2d 492 (1991) at paragraph one of the syllabus.  "'Circumstantial evidence and direct evidence inherently possess the same probative value [.]'" *Jenks*, 61 Ohio St .3d at paragraph one of the syllabus.  Furthermore, " '[s]ince circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function

is concerned, all that is required of the jury is that i[t] weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt.'" *Jenks,* 61 Ohio St. 3d at 272, 574 N.E. 2d 492. While inferences cannot be based on inferences, a number of conclusions can result from the same set of facts. *State v. Lott*, 51 Ohio St.3d 160, 168, 555 N.E.2d 293(1990), *citing Hurt v. Charles J. Rogers Transp. Co.*, 164 Ohio St. 329, 331, 130 N.E.2d 820(1955). Moreover, a series of facts and circumstances can be employed by a jury as the basis for its ultimate conclusions in a case. *Lott*, 51 Ohio St.3d at 168, 555 N.E.2d 293, *citing Hurt*, 164 Ohio St. at 331, 130 N.E.2d 820.

{¶29} Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Daniels entered the apartment and shot Micha, John and Gretchen.

{¶30} We hold, therefore, that the state met its burden of production regarding each element of the crimes for which Daniels was indicted and, accordingly, there was sufficient evidence to submit the charges to the jury and to support Daniels's convictions.

*B. Manifest weight of the evidence.*

{¶31} As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997–Ohio–355; *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001).

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every

reasonable presumption must be made in favor of the judgment and the finding of facts.

*  *  *

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

**{¶32}** The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Murphy*, 4th Dist. Ross No. 07CA2953, 2008–Ohio–1744, ¶ 31. Because the trier of fact sees and hears the witnesses and is particularly competent to decide whether, and to what extent, to credit the testimony of particular witnesses, the appellate court must afford substantial deference to its determinations of credibility. *Barberton v. Jenney*, 126 Ohio St.3d 5, 2010–Ohio–2420, 929 N.E.2d 1047, ¶ 20. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002–Ohio–1152, at ¶ 13, citing *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999). Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact finder, as long as a rational basis exists in the record for its decision. *State v. Picklesimer,* 4th Dist. Pickaway No. 11CA9, 2012–Ohio–1282, ¶ 24.

**{¶33}** Once the reviewing court finishes its examination, an appellate court may not merely substitute its view for that of the jury, but must find that " 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id.

## ISSUE FOR APPEAL.

### *B.  Whether the trial court clearly lost their way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered.*

**{¶34}** The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig,* 10th Dist. Franklin No. 99AP–739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). Indeed, the trier of fact need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. Franklin No. 02AP–604, 2003–Ohio–958, ¶ 21, *citing State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. Franklin No. 02AP–1238, 2003–Ohio–2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the

same probative value as direct evidence. *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997).

**{¶35}** In the case at bar, the jury heard the witnesses viewed the evidence and heard Gretchen and Icies testify and be subjected to cross-examination. The jury further heard Daniels's arguments and explanations about the lack of physical evidence and discrepancies in the descriptions given by Gretchen and Icies. Thus, a rational basis exists in the record for the jury's decision.

**{¶36}** We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. Based upon the foregoing and the entire record in this matter we find Daniels's convictions are not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury heard the witnesses, evaluated the evidence, and was convinced of Daniels's guilt.

**{¶37}** The jury neither lost his way nor created a miscarriage of justice in convicting Daniels.

**{¶38}** Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crimes for which Daniels was convicted.

**{¶39}** Daniels's First Assignment of Error is overruled.

{¶40}  The Judgment of the Stark County Court of Common Pleas is affirmed.


By Gwin, PJ.,

Hoffman, J., and

Delaney, J., concur