[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Tate,* Slip Opinion No. 2014-Ohio-3667.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-3667

THE STATE OF OHIO, APPELLANT, *v*. TATE, APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Tate,* Slip Opinion No. 2014-Ohio-3667.]**

*Evidence that defendant was alleged perpetrator was overwhelming and undisputed—Appellate court should not have decided case on basis of issue that had not been raised without giving parties notice and opportunity to brief the issue.*

(No. 2013-0910—Submitted April 9, 2014—Decided September 4, 2014.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 97804, 2013-Ohio-570.

_____

FRENCH, J.

{¶ 1} In this case, the court of appeals, sua sponte, vacated the convictions of appellee, James Tate II, after finding insufficient evidence proving his identity as the perpetrator. Because the evidence of this fact was overwhelming, undisputed, and not mentioned in the court of appeals' opinion, we reverse.

**Background**

{¶ 2}   In May 2011, the Cuyahoga County Grand Jury indicted Tate on counts of kidnapping, abduction, importuning, gross sexual imposition, and public indecency.  Each count related to an incident with B.P., a 14-year-old female.  Tate waived his right to a jury, and the case proceeded to a bench trial.

{¶ 3}   At trial, it was undisputed that Tate encountered B.P. outside of the Euclid Public Library on February 12, 2011, walked with her to a nearby building, and eventually asked her for oral sex.  Tate conceded this in a videotaped interview with police soon after the incident and in his testimony at trial.  The theory asserted by Tate's defense, from opening statements through closing arguments, was that Tate had had innocent motives for approaching B.P. outside the library, that he had not known that she was underage, and that he had not used deception or force to obtain sexual contact.

{¶ 4}   In her testimony, B.P. stated that she was approaching the front doors of the Euclid Public Library, following her two friends, T.W. and L.J., when a man approached her and started talking to her about a study program.  He showed her an ID card containing his photograph next to the name "James Tates [sic]."  The ID card was admitted as an exhibit at the trial, and B.P. identified it as the one the man had shown her.  B.P. testified that the man had said that he was promoting a study group that was scheduled to meet behind a nearby tennis court and that he wanted to show her exactly where.  B.P. agreed, and the surveillance video shows the two walking away from the library.  T.W. and L.J. saw B.P. walking away with the man.  When T.W. called her name, B.P. looked back and waved for them to follow her.  They lost sight of B.P. when B.P. and the man walked behind a building.

{¶ 5}   B.P. testified that while walking, the man told her that she had a "nice body" and "could make a lot of money in one night."  According to B.P., they reached the entrance of the Euclid Memorial Pool when the man said that he

2

wanted to make sure that she was "committed to the business." B.P. stated that the man then grabbed her arm in such a way that she went to her knees. He then unzipped his pants and brushed her hand against his penis. B.P.'s cell phone began to vibrate, and she told the man that her mother was at the library and that she needed to leave. She stood up and walked away and saw T.W. and L.J. talking to a police officer in the pool's parking lot. The man followed behind B.P. and told her not to tell her friends what had happened because they "didn't need to know."

{¶ 6} B.P. and her friends began walking back to the library when the man, still following behind, handed her friends fliers advertising free Internet installation with a handwritten note, stating, "Call Now James" with a phone number. According to T.W., B.P. told them to walk faster because the man continued following them. T.W. testified that B.P. was shaking and crying. After discussing the incident in the library, B.P.'s friends convinced her to go to the nearby police station.

{¶ 7} Euclid Police Officer Adam Beese, the same officer who had spoken with B.P.'s friends in the parking lot earlier, responded to the police station and saw that the female making the complaint was the same female he had seen with a man near the pool. He then went to the library with Officer Phil Tschetter to look for the perpetrator. Upon entering, Officer Beese saw a man, whom he later identified as Tate, sitting at a computer. Officer Beese recognized Tate as the man he had seen walking with a female in the parking lot earlier. To confirm that Tate was the perpetrator, Officer Beese asked the police dispatcher to call the number that the perpetrator had given to B.P.'s friends. Officer Beese then observed Tate answer his phone, say hello several times, and hang up. The officers approached Tate and asked if they could speak to him by the library entrance. Tate gathered his belongings and went with the officers. He allowed

the officers to look at his phone, and Officer Beese was able to confirm that the phone's number matched the number on the flier.

{¶ 8} Tate identified himself to Officer Beese with the same photo ID that he had shown to B.P. According to Officer Beese, Tate's photograph appeared to have been hand cut and Scotch-taped to the ID card prior to lamination. Officer Beese arrested Tate and while searching him, found an "RTA fare card," with the name "James Tate" and a photograph that was identical to the one on the other ID. This card was also admitted as an exhibit. Officer Beese positively identified Tate in the courtroom.

{¶ 9} Officer Tschetter testified that while he was transporting Tate to the Euclid jail, Tate made several spontaneous statements, such as "I didn't know she was underage" and "she lured me there."

{¶ 10} Detective Daniel Novitski interviewed Tate on camera after Tate signed a waiver-of-rights form, which was admitted as an exhibit. The state played the interview at trial. Detective Novitski identified Tate in the courtroom.

{¶ 11} After the state's case-in-chief, Tate took the stand and admitted that he had approached B.P. outside the library, showed her his ID card, walked with her over to the pool area, and asked her for oral sex. He insisted, however, that he had not initially approached B.P. with sexual motives and that he had immediately ended the encounter upon learning that B.P. was underage.

{¶ 12} The trial court found Tate guilty on all counts except for the count of abduction. After announcing its verdict, the trial court said that it found B.P.'s testimony to be "very credible, * * * especially in light of the videotape, which any reviewing Court should pay close attention to." The trial court opined that the library surveillance video "totally destroys" Tate's version of events, because it showed that B.P. "did not appear to have any interest in [their] initial encounter" and that Tate was using a "definite hard sell in order to persuade her to come with" him.

**{¶ 13}** Tate appealed, raising several assignments of error. His assignment of error challenging the sufficiency of the evidence challenges only the evidence supporting his convictions for gross sexual imposition and kidnapping. Specifically, he argued that the state failed to produce evidence that he forced, threatened, or deceived B.P. to get her to go with him or used force or threat of force to obtain sexual contact. He did not assert that the state had failed to submit sufficient evidence that he was the perpetrator. The court of appeals, however, reversed the trial court judgment and vacated all of Tate's convictions, sua sponte, after finding that there was insufficient evidence to prove Tate's identity as the man who had committed the offenses against B.P.

**{¶ 14}** We accepted jurisdiction over the state's appeal.

**Analysis**

**{¶ 15}** Every criminal prosecution requires proof that the person accused of the crime is the person who committed the crime. This truism is reflected in the state's constitutional burden to prove the guilt of "the accused" beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Like any fact, the state can prove the identity of the accused by "circumstantial or direct" evidence. *State v. Jenks*, 61 Ohio St.3d 259, 272-273, 574 N.E.2d 492 (1991). The relevant question in a sufficiency-of-the-evidence review is whether, "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.,* at paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

**{¶ 16}** Here, no fact was more established at Tate's trial than Tate's identity. Tate admitted, in his interview with police and in his testimony at trial, that he had approached B.P. outside the library, walked with her to the pool, and asked her for oral sex. Officer Beese and Detective Novitski testified that the

man they had confronted in the library was the defendant seated in the courtroom. B.P. and T.W. also identified Tate as the perpetrator when they affirmatively answered questions referring to the perpetrator as "Mr. Tate, the defendant" and "the defendant." It was Tate in the library surveillance video. It was Tate's phone number on the fliers handed to B.P.'s friends. It was Tate's signature on the waiver-of-rights form. It was Tate's face on the photo ID handed to B.P and to Officer Beese. Any rational finder of fact could have easily concluded beyond a reasonable doubt that Tate was the man referred to in B.P.'s testimony.

{¶ 17} The court of appeals disagreed, but inexplicably omitted this evidence from its opinion. After suggesting that B.P. and her two friends were the only witnesses who testified at trial, the court of appeals concluded that there was "not sufficient evidence, circumstantial or otherwise, that [Tate] was 'the man' repeatedly referenced in the testimony of the victim and her two friends." 8th Dist. Cuyahoga No. 97804, 2013-Ohio-570, ¶ 13. It declared the record to be "devoid of any testimony from the victim or either of her two friends identifying [Tate] as the perpetrator," *id.* at ¶ 10, and criticized what it called the state's "failure to even attempt to elicit an in-court identification" from B.P. or her two friends, *id.* at ¶ 13.

{¶ 18} This analysis ignores the record and does not support a finding of insufficient evidence. An appellate court must review "*all of the evidence*" admitted at trial. (Emphasis sic.) *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781, 61 L.Ed.2d 560. Here, however, the court of appeals looked only to the testimony of B.P. and her two friends. Even then, the court did not mention B.P. or T.W.'s answers to questions referring to Tate as the perpetrator during cross-examination, or B.P.'s testimony that the man identified himself to her with the "James Tates" photo ID. There is no explanation for the court of appeals' failure to mention this evidence, or Tate's own testimony and his admission to being with B.P. that day

and asking her for oral sex, or any of the other overwhelming evidence of Tate's identity.

{¶ 19} A witness need not physically point out the defendant in the courtroom as long as there is sufficient direct or circumstantial evidence proving that the defendant was the perpetrator. *See Jenks*, 61 Ohio St.3d at 272-273, 574 N.E.2d 492; *United States v. Boyd*, 447 Fed.Appx. 684, 690 (6th Cir.2011) (collecting examples of when "in-court identification is not required"). Even if we were to ignore Tate's statements or the witnesses who identified him in the courtroom, any rational fact-finder could have found proof of his identity as the perpetrator based on the real evidence in the record, including the library's surveillance video, the two ID cards, and the fliers that Tate gave the girls bearing his name. *See* 1 *Wharton's Criminal Evidence*, Section 3:13 (15th Ed.2013) (stating that "[i]dentical names give rise to a presumption of identity of person").

{¶ 20} The court of appeals also referred to the standard for determining whether a verdict is against the manifest weight of the evidence. But a prerequisite for any reversal on manifest-weight grounds is conflicting evidence, more specifically, evidence weighing " 'heavily against the conviction,' " such that " 'the jury clearly lost its way and created such a manifest miscarriage of justice.' " *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). Here, there was no conflicting evidence on the issue of identity— Tate agreed that he was the man with B.P. This is light-years away from the exceptional case warranting reversal on manifest-weight grounds. *See Thompkins* at 387.

{¶ 21} Finally, appellate courts should not decide cases on the basis of a new, unbriefed issue without "giv[ing] the parties notice of its intention and an opportunity to brief the issue." *State v. 1981 Dodge Ram Van*, 36 Ohio St.3d 168,

170, 522 N.E.2d 524 (1988). We reverse not only because the evidence of Tate's identity was overwhelming, but also because neither party argued otherwise.

**Conclusion**

**{¶ 22}** Accordingly, we reverse the judgment of the court of appeals. We remand the matter to the court of appeals with instructions to consider Tate's assignments of error.

Judgment reversed

and cause remanded.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, and O'NEILL, JJ., concur.

_____

Timothy J. McGinty, Cuyahoga County Prosecuting Attorney, and James M. Price, Assistant Prosecuting Attorney, for appellant.

Robert L. Tobik, Cuyahoga County Public Defender, and Paul Kuzmins, Assistant Public Defender, for appellee.

_____