[Cite as *State v. Jones*, 2019-Ohio-2940.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28179 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-1910 |
| | : | |
| TRACY LAMAR JONES | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 19th day of July, 2019.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MICHAEL P. ALLEN, Atty. Reg. No. 0095826, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

JOHN S. PINARD, Atty. Reg. No. 0085567, 120 West Second Street, Suite 603, Dayton, Ohio 45402
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant Tracy Lamar Jones appeals his conviction for felonious assault, a felony of the second degree, with a firearm specification.   Jones filed a timely notice of appeal with this court on October 24, 2018.

{¶ 2} Sometime in 2015, the victim, Jabbrae Moore began dating a woman named Latoria.   Moore was eventually introduced to Latoria's brother, defendant-appellant Jones.   Moore was associated with an individual who owned several residences in Dayton, Ohio, and he arranged for Jones to begin living in a house located on Laurel Avenue in Dayton (hereinafter "the residence").   Moore and Jones reached an oral agreement whereby Jones would make an initial down payment of $2,000, and would then pay $500 per month in rent while living in the residence.   The record establishes that, although Jones made the initial down payment of $2,000 to Moore, he failed to make any further rent payments while he lived at the residence.

{¶ 3} Moore testified that on May 7, 2018, he traveled to the residence in an attempt to speak with Jones and possibly collect some of the delinquent rent payments. When he arrived, Moore observed Jones entering the residence and called out to him. Jones entered the residence without responding to Moore.   Shortly thereafter, while Moore was speaking to another individual on the street, Jones walked back outside of the residence and fired a gun into the air.   Moore testified that he immediately left the area and went home.

{¶ 4} Moore testified that one day later on May 8, 2018, he left his place of employment at approximately 3:30 p.m. and drove to a store located on Hoover Avenue in Dayton, Ohio.   Before he reached the store, Moore observed Jones reversing his vehicle into the driveway of a residence located on Cleverly Road, a nearby street that

branched off of Hoover Avenue. Moore testified that he parked his vehicle on Hoover Avenue and approached the location where he had observed Jones. Moore testified that once he reached the residence, he called out to Jones, who was standing on the porch with two other individuals. Moore testified that Jones then pulled a handgun from his pants and aimed it at him. Moore testified that, at this point, he turned around and began running back to his vehicle. After he turned around, Moore heard a single gunshot and fell to the ground, having been shot in the side of his abdomen. Moore testified that while he was lying on the ground, he observed Jones and the two other individuals get into Jones's vehicle and drive away from the scene.

{¶ 5} Moore testified that after Jones left, he got up, ran back to his vehicle, and started driving toward Miami Valley Hospital. While he was driving to the hospital, Moore called his brother, Antone Moore, to inform him of the shooting. Moore testified that, as he was driving, he became dizzy and began losing consciousness as a result of having been shot. Therefore, Moore decided to drive to his aunt's residence nearby on Second Street in Dayton, Ohio. Moore stopped his vehicle in the middle of street in front of his aunt's house and began honking his horn in order to get his aunt's attention.

{¶ 6} Moore testified that, once his aunt approached his vehicle, he told her that he had been shot, and she called the paramedics. The paramedics moved Moore from his vehicle into an ambulance and transported him to Miami Valley Hospital. During surgery, doctors discovered that the bullet had hit Moore's intestines in four places and also hit his spine. Initially, Moore did not identify Jones as the individual who shot him. However, while recovering in the hospital, Moore informed the police that Jones had shot him. Moore also identified Jones as his assailant from a photospread.

{¶ 7} Based upon the information provided by Moore, an arrest warrant was issued for Jones. On May 22, 2018, Dayton Police Officer Michael Beane received a report from other members of his unit that Jones had been seen at an apartment complex located on North Gettysburg Drive in Dayton, Ohio. Officer Beane testified that he traveled to that location and observed an individual matching Jones's description standing in the parking lot of the apartment complex. Upon observing Officer Beane's cruiser, Jones began running toward North Gettysburg Drive. Officer Beane exited his cruiser and began chasing Jones on foot. Jones got on a bicycle and began riding through traffic on North Gettysburg Drive. Officer Stephen Lloyd, who was responding to the call about the ongoing chase, turned onto North Gettysburg Drive and observed Jones riding towards him. Officer Lloyd testified that he pulled his cruiser around a traffic median and stopped in front of Jones. Jones collided with Officer Lloyd's cruiser, fell off the bicycle, and was arrested by the police officers.

{¶ 8} On June 21, 2018, Jones was indicted for one count of felonious assault (deadly weapon) and one count of felonious assault (serious harm); each count was accompanied by a firearm specification. At his arraignment on June 26, 2018, Jones stood mute, and the trial court entered a plea of not guilty on his behalf.

{¶ 9} Prior to trial, Jones filed a waiver of his right to a jury trial. On August 27, 2018, Jones's case was tried to the bench. On September 27, 2018, the trial court found Jones guilty of both counts of felonious assault as well as the firearm specifications. The trial court ordered a presentence investigation report (PSI). At Jones's disposition on October 18, 2018, the trial court merged both counts and the firearm specifications. The State elected to proceed to sentencing on the count of felonious assault (serious harm).

Thereafter, the trial court sentenced Jones to five years in prison for felonious assault and three years for the firearm specification, to run consecutively, for an aggregate sentence of eight years in prison.

{¶ 10} It is from this judgment that Jones now appeals.

{¶ 11} Jones's sole assignment of error is as follows:

DEFENDANT'S CONVICTION FOR FELONIOUS ASSAULT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 12} In his assignment, Jones contends that his conviction for felonious assault was against the manifest weight of the evidence. Specifically, Jones argues that Moore's identification of him as the shooter at trial contradicted previous statements he made to police wherein he stated that he did not know who shot him. Jones also argues that Moore's testimony at trial regarding the physical location (the street address) where he was shot was inconsistent with statements he made at a pre-trial hearing.

{¶ 13} A weight-of-the-evidence argument "challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *State v. Wilson,* 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 12; *see Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 19 (" 'manifest weight of the evidence' refers to a greater amount of credible evidence and relates to persuasion"). When evaluating whether a conviction was against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be

reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 14} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of fact to resolve. *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, * 4 (Aug. 22, 1997).

{¶ 15} This court will not substitute its judgment for that of the trier of fact on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. *State v. Bradley*, 2d Dist. Champaign No. 97-CA-03, 1997 WL 691510, * 4 (Oct. 24, 1997).

{¶ 16} "Every criminal prosecution requires proof that the person accused of the crime is the person who committed the crime. * * * Like any fact, the state can prove the identity of the accused by 'circumstantial or direct' evidence." *State v. Tate*, 140 Ohio St.3d 442, 2014-Ohio-3667, 19 N.E.3d 888, ¶ 15.

{¶ 17} As previously stated, Moore had been acquainted with Jones since approximately 2016, while Moore was in a relationship with Jones's sister. Moore helped Jones obtain housing through one of Moore's own contacts in the Dayton community.

Moore had attempted to talk to Jones the day before the shooting regarding their oral rent payment arrangement. Moore testified that, on the day of the shooting, he observed Jones getting out of a vehicle and walking toward a residence located on Cleverly Road; Moore parked his vehicle on Hoover Avenue and approached the location where he had observed Jones. Once he reached the residence, Moore called out to Jones, who was standing on the porch with two other individuals. Moore testified that Jones then pulled a handgun from his pants and aimed it at him. Moore testified that, after he was shot and while lying on the ground, he observed Jones and the two other individuals get into Jones's vehicle and drive away from the scene.

{¶ 18} Additionally, while Moore acknowledged at trial that he told the police on the day of the shooting that he did not know who shot him, the record establishes that only a couple of days after the shooting, Moore positively identified Jones as the individual who shot him while he was recuperating in the hospital. Moore also testified that he was shown a photospread from which he identified Jones as his assailant. The photospread was admitted into evidence and contains a notation from a police officer stating that Moore was "80%" confident about his selection at the time the photospread was shown to him. At trial, however, Moore testified that he was "100%" that Jones was the individual who shot him. We note that Moore testified that he did not recall telling the police officer at the time the photospread was administered that he was only "80%" confident that Jones was the shooter. Any reluctance by Moore to identify Jones as the shooter may be explained by Moore's relationship with Jones's sister.

{¶ 19} Regarding the location where the shooting occurred, Moore testified unequivocally at trial that he was shot on Cleverly Road, off Hoover Avenue. Defense

counsel utilized testimony from a preliminary hearing held on May 31, 2017, wherein Moore answered "yes" to a question posed to him asking if he had been shot at "4400 Hoover Street." At trial, Moore stated that he did not know that address and maintained that he had he been shot near a residence located on Cleverly Road.

{¶ 20} Jones asserts that there were inconsistencies regarding statements made during Moore's phone conversation with his brother immediately after the shooting occurred. At trial, Moore testified that, as he was driving to the hospital, he called his brother but did not remember anything that was said during the conversation. Conversely, Moore's brother, Antone, testified that Moore told him that Jones was the individual who shot him during the brief phone conversation. Rather than being inconsistent, Moore simply testified that he called his brother but did not remember what was said. Moore's testimony established that he did, in fact, call his brother immediately after the shooting while he was attempting to drive himself to the hospital.

{¶ 21} Finally, we note that Jones testified on his own behalf at trial that, although he was in the area at the time of the shooting, he was not the individual who shot Moore. Rather, Jones testified that immediately prior to the shooting he observed and heard Moore arguing with a drug dealer named "Black Face." Jones testified that he then ran inside a nearby residence when shots were fired, but did not specifically observe who shot Moore. Jones's friend, Andre Ecton, also testified that he was in the residence when Jones allegedly ran inside and that Jones informed him that a shooting had just occurred. Ecton testified that he heard shots, and Jones informed him that people were shooting at each other outside. Both Ecton and Jones testified that, after the shooting occurred, they got into Jones's car and left the scene but did not see anyone out in the

street.

**{¶ 22}** Having reviewed the record, we find no merit in Jones's manifest-weight challenge. It is well settled that evaluating witness credibility is primarily for the trier of fact. *State v. Benton*, 2d Dist. Miami No. 2010-CA-27, 2012-Ohio-4080, ¶ 7. A trier of fact does not lose its way and create a manifest miscarriage of justice if its resolution of conflicting testimony is reasonable. *Id.* Here, the trial court reasonably credited Moore's testimony identifying Jones as the individual who shot him in front of a residence located on Cleverly Road, near Hoover Avenue. Conversely, the trial court was free to reject Jones's testimony that he was not the individual who shot Moore. Accordingly, the trial court did not lose its way and create a manifest miscarriage of justice in finding Jones guilty of felonious assault, nor was the evidence of identification insufficient to sustain Jones's conviction.

**{¶ 23}** Jones's assignment of error is overruled.

**{¶ 24}** Jones's sole assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and HALL, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Michael P. Allen
John S. Pinard
Hon. Richard Skelton