[Cite as *State v. Johnson*, 2021-Ohio-1662.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 20AP-77 |
| | | (C.P.C. No. 19CR-1026) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Theodore L. Johnson, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on May 13, 2021

**On brief:** [*G. Gary Tyack*], Prosecuting Attorney, and *Sarah V. Edwards*, for appellee.

**On brief:** *Paul L. Scarsella*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Defendant-appellant, Theodore L. Johnson, appeals from a judgment of the Franklin County Court of Common Pleas convicting him of aggravated robbery and felonious assault, with repeat violent offender specifications. For the following reasons, we affirm.

**I. Facts and Procedural History**

{¶ 2} In February 2019, the Franklin County Grand Jury indicted Johnson on one count of aggravated robbery in violation of R.C. 2911.01, a first-degree felony, and one count of felonious assault in violation of R.C. 2903.11, a second-degree felony. Both counts carried a repeat violent offender specification under R.C. 2941.149(A). Johnson pleaded not guilty and waived his right to a trial by jury. A trial before the court was held in

November 2019.  As pertinent to this appeal, the following evidence was adduced at the trial.

{¶ 3}    The victim in this case, John C. Prater, Jr., testified as follows.  Prater resides in a condominium near the Water's Edge apartment complex in Franklin County, Ohio. During the evening of September 22, 2018, Prater stopped to pick up laundry on his way home.  At the laundromat, Prater also met his daughter, who provided him with approximately $1,500 in rent money she had collected from tenants.  When Prater arrived home, he parked outside and listened to the radio in his vehicle.  After about ten minutes, Prater turned off the vehicle and got out to retrieve his laundry in the back seat.  As he reached into the vehicle, a man with a "frightening-type mask" was immediately behind him mumbling something.  (Tr. Vol. 2 at 78.)  Prater shoved the man, and the man struck back, repeatedly cutting Prater with a knife.

{¶ 4}    Prater further testified that, at some point in the scuffle, he was able to remove the mask from his assailant, causing the black male to run away.  The man then "jumped into an automobile that simply blinked his lights" and the vehicle "backed up * * * real fast."  (Tr. Vol. 2 at 81.)  Prater, bleeding from the knife wounds to his hand, arm, leg and abdomen, was able to make it into his residence.  Before entering the residence, however, Prater left the mask at the location of the assault, and he informed people who arrived at the scene to ensure the police obtained the mask.

{¶ 5}    Steven Cunningham, a security officer for the Water's Edge apartment complex, testified that he heard a "deathly painful cry" during his shift on the night of September 22, 2018.  (Tr. Vol. 2 at 53.)  Within seconds, he witnessed a black male, about five feet and nine or ten inches tall, quickly walking through a grassy area and toward the street.  The man "looked tired" and was "kind of leaning forward a little bit."  (Tr. Vol. 2 at 54.)  The man got into the driver's side of a "goldish-bronze color" SUV and drove away. (Tr. Vol. 2 at 61.)  Cunningham followed the SUV for a short distance and was able to obtain the last four digits of the license plate.  When Cunningham heard emergency sirens, he drove back to the apartment complex.

{¶ 6}    Columbus Division of Police officers arrived soon after the incident.  Officer Nathan Anstine testified that when he arrived, Prater's clothes were blood soaked and blood was on the ground near Prater's vehicle.  Based on the severity of his injuries, Prater was

taken to an area hospital. Officer Kiara Husband authenticated a police body-camera video recorded at the scene. In the video, which was admitted into evidence, Prater states to the police that the assailant told him, "[g]ive me your money, give me your money," during the confrontation. (State's Ex. C.) The detective assigned to the case, Jason Bolt, testified that the assailant's mask, which was lying on the ground next to Prater's vehicle, was collected as part of the investigation. Detective Bolt also collected buccal swab samples from Prater as well as Johnson, who was arrested on February 19, 2019, for DNA analysis.

{¶ 7} Hope Olson, a Columbus Division of Police Crime Lab forensic scientist with a DNA specialty, testified that she conducted DNA analyses on the buccal swab samples and camouflage mask collected in this matter. Olson detailed the DNA analysis process and attested that the conclusions she reached in her reports in this matter were within a reasonable degree of scientific certainty. She also noted that DNA analysis and testing does not reveal how or when a person's DNA was left at a particular location.

{¶ 8} Olson's first report focused on the samples collected from Prater and the mask. Olson collected samples from blood stained areas on the mask and samples from the mask's eye and mouth areas. Based on Olson's analysis, she determined the DNA profile of samples taken from the blood stains on the mask were consistent with Prater's DNA profile. More specifically, she determined it was 72.5 nonillion times more likely that the DNA profile of the samples originated from Prater than from an unknown, unrelated individual. The samples taken from the eye and mouth areas were "interpreted as being a mixture of two individuals." (Tr. Vol. 2 at 146.) She added that it was "unlikely" a third individual's DNA was present in the samples from the eye and mouth areas. (Tr. Vol. 2 at 162.) For these samples, Olson determined that it was "at least 364 sextillion times more likely if the evidentiary profile had originated from John Prater, Jr., and one unknown, unrelated individual than if it originated from two unknown, unrelated individuals." (Tr. Vol. 2 at 146-47.)

{¶ 9} Olson subsequently received the sample from Johnson to analyze against the samples taken from the mask's eye and mouth areas. Her second report, which supplemented the first report, detailed her findings as to that comparison. Based on her analysis, Olson determined "it is at least 1.43 decillion times more likely that the evidentiary

profile originated from John Prater, Jr., and Theodore Johnson than if it originated from John Prater, Jr., and one unknown, unrelated individual." (Tr. Vol. 2 at 150-51.)

{¶ 10} Regarding the repeat violent offender specifications, the state presented evidence that Johnson previously was convicted of committing robbery in violation of R.C. 2911.02, a second-degree felony.

{¶ 11} One witness testified on behalf of the defense, Joseph Furlong. Furlong met Johnson in 2014 and was his roommate in 2018. Sometime in August or September 2018, another roommate became upset with Johnson and tossed his personal belongings outside their residence. Furlong saw "multiple people going through" Johnson's personal belongings that were "strewn all over the front yard." (Tr. Vol. 3 at 197, 199.)

{¶ 12} After the presentation of evidence, the trial court found Johnson guilty as charged in the indictment. The trial court sentenced Johnson to a total of 20 years in prison.

{¶ 13} Johnson timely appeals.

## II. Assignment of Error

{¶ 14} Johnson assigns the following error for our review:

> The verdict of the court was against the manifest weight of the evidence.

## III. Discussion

{¶ 15} Johnson's sole assignment of error alleges his convictions were against the manifest weight of the evidence. This assignment of error lacks merit.

{¶ 16} Determinations of credibility and weight of the testimony are primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. The jury, or the court in a bench trial, may take note of inconsistencies at trial and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982); *see State v. Tate*, 140 Ohio St.3d 442, 2014-Ohio-3667, ¶ 20 ("a prerequisite for any reversal

on manifest-weight grounds is conflicting evidence"). *See Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983) (Appellate courts should reverse a conviction as being against the manifest weight of the evidence only in the most " 'exceptional case in which the evidence weighs heavily against the conviction.' "). Therefore, an appellate court considering a manifest weight challenge "may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 22, citing *Thompkins* at 387.

{¶ 17} Johnson fails to demonstrate that his convictions were against the manifest weight of the evidence. He was found guilty of committing aggravated robbery and felonious assault, with repeat violent offender specifications. R.C. 2911.o1 defines the offense of aggravated robbery, and states in pertinent part: "No person, in attempting or committing a theft offense * * * shall do any of the following (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it; [or] (3) Inflict, or attempt to inflict, serious physical harm on another." R.C. 2911.01(A). R.C. 2903.11 proscribes felonious assault, and states in pertinent part: "No person shall knowingly * * * [c]ause serious physical harm to another." And as pertinent here, a person is a "repeat violent offender" if (1) he is being sentenced for committing "any felony of the first or second degree that is an offense of violence * * * "; and (2) he "previously was convicted of or pleaded guilty to [that same type of ] offense * * *." R.C. 2929.01(CC)(1)(a) and (2). *See* R.C. 2941.149(A) (repeat violent offender specification statute).

{¶ 18} The evidence at trial demonstrated that, during the evening of September 22, 2018, Prater was robbed and assaulted by a black male just outside his residence. During the attack, Prater was stabbed multiple times and sustained injuries requiring his transfer to a hospital. Additionally, as shown in the police body-camera video taken shortly after the assault, Prater reported to the police that the assailant said, "[g]ive me your money, give me your money." (State's Ex. C.) Prater managed to remove the camouflage mask covering

the assailant's face during the confrontation, but he was unable to get a good look at the assailant. Consequently, the disputed issue at trial focused on whether Johnson was Prater's attacker. In this regard, the state presented DNA evidence demonstrating that Johnson was the attacker. The forensic scientist's testimony indicated that the DNA of both Prater and Johnson was found in the eye and mouth areas of the attacker's mask, and that the existence of a third contributor of DNA to those areas was unlikely. This reasonably leads to the inference that Johnson was Prater's attacker. Johnson's manifest weight argument centers on this DNA evidence linking him to the robbery and assault of Prater.

{¶ 19} Relevant DNA evidence is admissible in Ohio. *State v. Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, ¶ 86. Questions regarding the reliability of DNA evidence in a particular case, including DNA statistics on population frequency, go to the weight of the evidence rather than its admissibility. *State v. Foust*, 105 Ohio St.3d 137, 2004-Ohio-7006, ¶ 85; *State v. Pierce*, 64 Ohio St.3d 490 (1992). Thus, the strength and any limitations of the state's DNA evidence was for the trial court, as the trier of fact, to evaluate. Johnson, however, contends that a trier of fact should be critical of a DNA mixture involving multiple profiles because it inherently requires a more difficult analysis, and that, in this case, the state's evidence regarding the DNA comparisons should have been more detailed. Johnson therefore argues the DNA evidence linking him to the assailant's mask necessarily should have been discounted and given very little if any weight. We disagree.

{¶ 20} Contrary to Johnson's contention that the testimony regarding the sample containing a mixture of multiple DNA profiles was not sufficiently comprehensive, we find the forensic scientist thoroughly detailed the DNA analysis process, including providing an explanation as to how her examination of certain segments of DNA enabled her to distinguish and identify the two DNA profiles in the same sample. Considering the DNA evidence was the only evidence that linked Johnson to the crimes, it is clear the trial court found that evidence to be convincing. And Johnson has presented no compelling basis for this court to disturb this factual determination.

{¶ 21} In the absence of evidence weighing heavily against the convictions, we find no manifest injustice in the trial court finding Johnson guilty of the alleged crimes. Because Johnson's convictions were not against the manifest weight of the evidence, we overrule his sole assignment of error.

## IV. Disposition

{¶ 22} Having overruled Johnson's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN and KLATT, JJ., concur.