[Cite as *State v. Cofield*, 2021-Ohio-3773.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
HURON COUNTY

State of Ohio                                  Court of Appeals No. H-20-019

　　　　Appellee                          Trial Court No. CRI 2019-1075

v.

Carlos Anthony Cofield                    **DECISION AND JUDGMENT**

　　　　Appellant                         Decided:  October 22, 2021

* * * * *

James Joel Sitterly, Huron County Prosecuting Attorney,
for appellee.

Sarah A. Nation, for appellant.

* * * * *

**ZMUDA, P.J.**

## I.  Introduction

{¶ 1} This matter is on appeal from the judgment of the Huron County Court of Common Pleas, sentencing appellant to an aggregate prison term of 8 years after a jury found him guilty of multiple burglary and theft offenses.  Finding no error, we affirm.

## II. Background and Procedural History

{¶ 2} In the fall of 2019, the sheriff's departments of Huron and Erie County investigated a string of burglaries in rural areas along the shared county line. Five homes were targeted on five separate days: September 13, September 14, September 18, September 26, and October 2. The families in the first four break-ins lost property that included televisions, electronics, game systems, laptops, jewelry, military medals, foreign currency and jars of coins, and other items that were easily carried away. A firearm was also missing from the first home, and law enforcement did not recover that weapon.

{¶ 3} Homeowners spotted a silver car at the second and the fifth home. At the fifth home, the homeowner also interrupted two individuals in the act of entering through her kitchen window, and she was able to write down the license plate number for the car as the individuals fled. The fifth homeowner immediately called authorities to report the attempted break-in, identifying a silver Chrysler and reciting the license plate number. While a deputy was responding to the homeowner's call, the chief of police in the nearby town of Wakeman spotted a vehicle matching the description of the suspect's car with the same license plate number. The chief notified dispatch and initiated a traffic stop of the silver car.

{¶ 4} At the time of the traffic stop, appellant was driving the vehicle and his then-girlfriend, Madyson Felter, was in the passenger seat. Both Huron and Erie County sheriff's deputies quickly responded to assist with the traffic stop, and the fifth homeowner was transported to the scene to identify the individuals stopped. She

2.

positively identified both appellant and Felter, and the deputies took the pair into custody and transported them, separately, to the sheriff's office.

{¶ 5} During transport, appellant admitted to making a mistake by trying to enter the fifth home in order to take property to sell. He admitted that he and Felter each had a heroin addiction, and claimed the October 2 incident was the first time he had ever attempted to steal from someone other than his family. During subsequent, joint questioning by Detective Sergeant Dennis Papineau of the Erie County Sheriff's office and Detective Ted Evans of the Huron County Sheriff's office, appellant changed his story, claiming he stopped at the fifth home because he had car trouble and was seeking assistance. However, appellant admitted to some conduct related to the series of break-ins. He admitted he destroyed a laptop because it was being tracked, a fact corroborated by one of the victims who attempted to locate their laptop by tracking the IP address. Appellant also admitted to having the firearm taken from the first home, providing a description of the firearm and indicating he sold it, along with televisions and computers, to an individual identified as "MJ" in Cleveland.

{¶ 6} After obtaining a warrant, investigators searched appellant's vehicle.[1] They discovered drug paraphernalia and items reported missing in some of the burglaries. Officers recovered other property taken in the burglaries from appellant's residence, shared with Felter. They also analyzed an iPhone, in appellant's possession but belonging to Felter, and found evidence of other items taken from the homes based on

---

[1] Appellant's mother was the registered owner of the vehicle.

3.

images, video, text and chat messages, GPS location data, and internet search histories. Data on the iPhone led investigators to a jewelry store that purchased gold and coins, and they obtained an invoice listing items taken from the homes along with security footage of appellant and Felter selling or attempting to sell some of the items reported stolen. In sum, the investigation linked appellant to items taken from all of the first four houses, and the fifth homeowner witnessed appellant and Felter as they attempted to enter her home through a window.

{¶ 7} After initially giving deputies a false name, Felter later cooperated with the investigation. She walked investigators through two of the victims' homes and described the pair's process. She also agreed to testify against appellant at trial. She admitted that she and appellant were committing the crimes to get property to sell so they could buy drugs. Felter indicated that she and appellant were addicted to heroin.

{¶ 8} Appellant was indicted for five counts of burglary, five counts of theft, two counts of petty theft, one count of aggravated burglary, one count of grand theft where the property is a firearm, and one count of engaging in a pattern of corrupt activity based on the five incidents, as follows:

September 13, 2019 incident

Count 1: aggravated burglary in violation of R.C. 2911.11(A)(2) and (B), where the criminal offense is theft in violation of R.C. 2913.02(A)(1) and (B)(2), and the offender had a deadly weapon, a felony

4.

of the first degree, with a firearm specification pursuant to R.C. 2941.141(A);

Count 2: burglary in violation of R.C. 2911.12(A)(2) and (D) where the criminal offense is theft in violation of R.C. 2913.02(A)(1) and (B)(2), a felony of the second degree, with a firearm specification pursuant to R.C. 2941.141(A);

Count 3: grand theft when the property is a firearm in violation of R.C. 2913.02(A)(1) and (B)(4), a felony of the third degree, with a firearm specification pursuant to R.C. 2941.141(A);

Count 4: theft in violation of R.C. 2913.02(A)(1) and (B)(2), where the property was a negotiable instrument as defined by R.C. 2913.71, a felony of the fifth degree;

Count 5: theft in violation of R.C. 2913.02(A)(1) and (B)(2), a felony of the fifth degree;

September 18, 2019 incident

Count 6: burglary in violation of R.C. 2911.12(A)(1) and (D) where the criminal offense is theft in violation of R.C. 2913.02(A)(1) and (B)(2), a felony of the second degree;

Count 7: theft in violation of R.C. 2913.02(A)(1) and (B)(2), a felony of the fifth degree;

Count 8: petty theft in violation of R.C. 2913.02(A)(1) and (B)(2), a misdemeanor of the first degree;

September 26, 2019 incident

Count 9: burglary in violation of R.C. 2911.12(A)(1) and (D) where the criminal offense is theft in violation of R.C. 2913.02(A)(1) and (B)(2), a felony of the second degree;

Count 10: theft in violation of R.C. 2913.02(A)(1) and (B)(2), a felony of the fifth degree;

Count 11: petty theft in violation of R.C. 2913.02(A)(1) and (B)(2), a misdemeanor of the first degree;

September 14, 2019 incident

Count 12: burglary in violation of R.C. 2911.12(A)(1) and (D) where the criminal offense is theft in violation of R.C. 2913.02(A)(1) and (B)(2), a felony of the second degree;

Count 13: theft in violation of R.C. 2913.02(A)(1) and (B)(2), a felony of the fifth degree;

October 2, 2019 incident

Count 14: burglary in violation of R.C. 2911.12(A)(1) and (D) where the criminal offense is theft in violation of R.C. 2913.02(A)(1) and (B)(2), a felony of the second degree;

September 13 – October 2 incidents

Count 15: engaging in a pattern of corrupt activity in violation of

R.C. 2923.32(A)(1) and (B)(1), a felony of the second degree.

{¶ 9} The matter proceeded to a jury trial on August 5-10, 2020.  The victims/homeowners each testified regarding missing property, with a specific monetary value assigned by victims regarding their loss from two of the homes.  Responding deputies also testified regarding the initial investigations, and Detective Papineau and Detective Evans each testified regarding their joint investigation.  As to forensic findings, the investigation indicated the suspects used gloves, based on "observed gloved hand impressions."  They attempted to recover potential trace DNA, but had no success in obtaining sufficient samples for comparison testing.

{¶ 10} The prosecution called Felter as part of their case, and she testified prior to any plea agreement regarding her own charges.  Felter acknowledged that she offered to testify in the hope that her cooperation would result in a favorable sentence, once she entered a plea.  Felter described each of the four break-ins and the fifth, attempted break-in.  She indicated she and appellant selected target homes randomly, based on whether someone appeared to be home, and gained entry through a ground-level window.  Appellant carried the heavier items, like televisions, and she carried smaller items, like jewelry.  Felter also indicated that, at one of the homes, appellant cut his hand on broken glass and she wrapped it with tape until appellant could seek treatment at an urgent care.  The two sold property at various pawn shops or to a "fence," mostly in the Cleveland area, and then used the money to buy drugs.

7.

{¶ 11} At the close of the prosecution's case, appellant's trial counsel moved for acquittal pursuant to Crim.R. 29, and the trial court dismissed Count 1: aggravated burglary, Count 4: theft of a negotiable instrument, and Count 15: engaging in a pattern of corrupt activity. The trial court also dismissed the firearm specifications.

{¶ 12} In closing argument, appellant's trial counsel acknowledged the prosecution established appellant "participated in the handling and disposing of stolen goods." He noted, however, that appellant was not charged with that particular offense. Counsel acknowledged appellant's presence at the last home, but argued that Felter was the one responsible for the previous break-ins, and she was motivated by self-interest in accusing appellant of the other crimes. He further argued that the lack of blood found at the scene, where she claimed appellant cut his hand, cast doubt on Felter's truthfulness.

{¶ 13} Prior to deliberations, the trial court instructed the jury and included the following instruction regarding Felter's testimony:

> The testimony of an accomplice that is supported by other evidence does not become inadmissible because of the accomplice's complicity, moral turpitude or self-interest, but the admitted or claimed complicity of a witness may affect the witness' credibility and make the witness' testimony subject to grave suspicion, and require that it be weighed with great caution.

8.

It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine the quality and worth, or its lack of quality and worth.

{¶ 14} After deliberations, the jury found appellant guilty as to lesser included offenses of burglary in Counts 2, 6, 9, and 12, each a felony of the third degree; guilty of grand theft where the property is a firearm in Count 3, a felony of the third degree; guilty of theft in Counts 5, 7, and 10, each a felony of the fifth degree; guilty of petty theft in Counts 8 and 11, each a misdemeanor of the first degree; and guilty of attempted burglary in Count 14, a felony of the third degree. The jury found appellant not guilty as to theft in Count 13.

{¶ 15} At sentencing, the trial court determined that Counts 3 and 5 merged with Count 2, Counts 7 and 8 merged with Count 6, and Counts 10 and 11 merged with Count 9.[2] The trial court then addressed sentence.

{¶ 16} In determining the sentence, the trial court noted appellant's crimes were serious, stating, "We're way beyond [probation and treatment] here. * * * Whether they're third degree felonies of first degree felonies, they're serious offenses, because you went into somebody else's home." The trial court considered the freedom to feel secure in one's own home as a fundamental right, and because appellant violated this security

---

[2] Rather than the state electing the counts for sentencing, the trial court indicated which counts would proceed to sentencing and the state agreed.

9.

and two of the victims were women, living alone, it considered appellant's conduct deserved a serious sentence. The trial court explained:

I'm telling you this stuff, because I have to go through the statutory considerations as well, but I'm telling you from my perspective, why this is serious business here. Okay? It's also serious because you've got a prior record. You've been in the institution before, and you were on post-release control when this happened. Those are aggravating circumstances for the purposes of sentencing. They add to the predicament that you're in. Those kind of things, has a prior record, has been at the penitentiary before, is on post-release control, these things statistically, they show that you – it give rise to an increase in the probability of you committing another crime when you're at liberty. So that's something else that I have to take into consideration.

{¶ 17} In specifically addressing the statutory factors, the trial court state on the record:

Now, I have to decide whether any of the terms that I'm going to impose today are going to be imposed consecutively, and I'm finding that it's something that I have to do, because these are separate offenses. They're separate occurrences. And, the sentences, even the maximum sentences under the law would not be enough to properly punish you and to protect the public from future crimes. I'm also finding that the consecutive

sentences are necessary, because you were on [post-release control] when you committed the offenses, and that history of the conduct, the separate instances, and that the public to be protected from future instances require the public to be protected from future crime. Okay.

So that's what I'm finding here. I'm going to sentence you as follows: In Count 2 the burglary felony 3, two years; Count 6, burglary, two years; Count 9, burglary, two years; Count 12, the burglary, two years; Count 14, attempting burglary, F-3, two years.

Now with regard to those sentences, the sentence imposed in Counts 2, 6, 9, 12 are to be served consecutive to one another. It's eight years. And then Count 14, the attempting burglary felony 3, two years, that gets sentenced and served concurrent to the sentences imposed in those other counts.

{¶ 18} The trial court's findings regarding consecutive sentences were also included in the sentencing entry, as follows:

The Court finds the consecutive sentence is necessary to protect the public from future crimes or to punish the offender; consecutive sentences are not disproportionate to the seriousness of the offender's conduct or the danger the offender poses to the public and the Court finds:

• Offender committed multiple offenses while under post-release control;

• At least two of the multiple offenses were committed as part of one or more courses of conduct and the harm caused by two or more of the multiple offenses was so great that no single prison for any of the offenses committed adequately reflects the seriousness of the offender's conduct;

• The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

In addition to the prison sentence, the trial court ordered restitution to two of the victims/homeowners totaling $1,167.28, provided appellant notice regarding post-release control, granted appellant 267 days jail-time credit, and waived costs.

{¶ 19} Appellant filed a timely appeal of this judgment.

### III. Assignments of Error

{¶ 20} Appellant now challenges his conviction, asserting the following assignments of error:

I. THE TRIAL COURT ERRED IN ORDEREING [sic.] CONSECUTIVE SENTENCES.

II. THE DEFENDANT'S CONVICTION IS BASED UPON INSUFFICIENT EVIDENCE AND HIS CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

## IV. Analysis

{¶ 21} We address appellant's assignments of error in reverse, first considering the sufficiency and weight of the evidence in support of conviction. Appellant contends that the lack of forensic or video evidence and reliance on the testimony of an accomplice rendered the conviction with neither sufficient nor persuasive evidence. Sufficiency of the evidence and manifest weight of the evidence are quantitatively and qualitatively different legal concepts. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). While appellant combines his challenge to the sufficiency and manifest weight in one assignment of error, we address each challenge in turn.

### A. Sufficiency

{¶ 22} Appellant first challenges the sufficiency of the evidence based on the absence of forensic or video/pictorial evidence linking him to each break-in. Sufficiency is a question of law. *Thompkins* at 386. In reviewing sufficiency, we neither weigh the evidence nor assess a witness's credibility. *State v. Were,* 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶ 132. We view the evidence most favorably for the prosecution and consider whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Citations omitted) *State v. Smith,* 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997).

{¶ 23} Here, the trial court granted appellant's motion for acquittal pursuant to Crim.R. 29 as to Counts 1, 4, and 15, and as to the firearm specifications. The jury found appellant not guilty of Count 13. Of the guilty findings, the jury found appellant guilty of

13.

the lesser-included offense of burglary, a felony of the third degree, in Counts 2, 6, 9, and 12. The jury found appellant guilty as charged in the indictment for grand theft of the firearm in Count 3, theft in Counts 5, 7, and 10, petty theft in Counts 8 and 11, and attempted burglary in Count 14.

{¶ 24} In challenging the sufficiency of the evidence, appellant does not address the elements required for each conviction, and acknowledges the "detailed testimony as to the crimes, property taken and how each crime was executed" by Felter.

{¶ 25} The elements that must be demonstrated to sustain a conviction for the lesser-included burglary offenses are trespass in an occupied structure or separately secured or separately occupied portion of an occupied structure, using force, stealth, or deception, with the purpose to commit any criminal offense. R.C. 2911.12(A)(3).

{¶ 26} To sustain a conviction for attempted burglary, the evidence must demonstrate purpose or knowledge to engage in conduct that, if successful, would result in a trespass in an occupied structure when another person, not an accomplice, is present, with the purpose to commit any criminal offense. R.C. 2923.02(A) and 2911.12(A)(1).

{¶ 27} Proof of the theft offenses required evidence that the offender knowingly obtained or exerted control over property, with a purpose to deprive the owner and without consent of the owner, with the value of the property determining the degree of the offense. R.C. 2913.02(A)(1) and (B)(2).[3]

---

[3] Pursuant to R.C. 2913.02(B)(2), an offense is a misdemeanor of the first degree, but if the value of the stolen property is more than $1,000 but less than $7,500, the offense is a felony of the fifth degree.

14.

**{¶ 28}** With no argument that any of these statutory elements were lacking, appellant instead challenges the evidence that identified his role in each break-in. Proof of identity is part of every criminal prosecution, "reflected in the state's constitutional burden to prove the guilt of 'the accused' beyond a reasonable doubt." *State v. Tate,* 140 Ohio St.3d 442, 2014-Ohio-3667, 19 N.E.3d 888, ¶ 15, citing *In re Winship,* 397 U.S. 358, 365, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). However, appellant only challenges the truthfulness of Felter's testimony, identifying his role in each offense. Accordingly, appellant's sufficiency challenge is without merit.

### B. Manifest Weight

**{¶ 29}** Appellant next argues that the conviction is against the manifest weight of the evidence, again challenging the credibility of Felter's testimony. In reviewing the weight of the evidence in support of conviction, we sit as a "thirteenth juror," and will reverse only if we disagree "with the factfinder's resolution of the conflicting testimony." *Thompkins,* 78 Ohio St.at 387, 678 N.E.2d 541. "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶ 30}** Based upon our review, we do not find this to be an exceptional case, requiring reversal. While Felter did provide the only eye-witness testimony that linked appellant to each of the first four break-ins, and Felter had an obvious self-interest in testifying, appellant's trial counsel addressed this self-interest in cross-examination, and

15.

other evidence corroborated details of Felter's testimony, including video of appellant attempting to sell some of the property and appellant's own admissions regarding his presence at the fifth home, his destruction of a computer, and his sale of the gun and televisions to a man known as MJ. The trial court also provided the appropriate jury instruction regarding the credibility of accomplice testimony. Finally, despite Felter's self-interest, there was no evidence that refuted her testimony. Therefore, the jury had few, if any, conflicts to resolve in reaching their verdicts, and the fact that Felter was an accomplice did not require the jury to reject her testimony. *See State v. Myers,* 154 Ohio St.3d 405, 2018-Ohio-1903, 114 N.E.3d 1138, ¶ 141 (testimony of an admitted accomplice, unrebutted with other evidence, may be credible evidence supporting conviction where other evidence tends to corroborate the accomplice's account).

{¶ 31} Accordingly, considering the record in this case, we find no merit in appellant's challenge to the sufficiency or weight of the evidence. Therefore, we find appellant's second assignment of error not well-taken.

## C. Consecutive Sentences

{¶ 32} In his remaining assignment of error, appellant argues the trial court failed to make the required findings under R.C. 2929.14(C)(4), to support consecutive sentences. In support, appellant cites to the trial court's findings recited at the sentencing hearing and argues the oral findings do not satisfy the statutory requirements. Appellant makes no claim regarding the trial court's written findings, contained within its judgment entry.

16.

{¶ 33} We review a felony sentence pursuant to R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1. "On appeals involving the imposition of consecutive sentences, R.C. 2953.08(G)(2)(a) directs the appellate court 'to review the record, including the findings underlying the sentence' and to modify or vacate the sentence 'if it clearly and convincingly finds * * * [t]hat the record does not support the sentencing court's findings under division * * * (C)(4) of section 2929.14 * * * of the Revised Code.'" *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 28.

{¶ 34} Prior to imposing consecutive sentences, the trial court must state the required findings, enumerated at R.C. 2929.14(C)(4), on the record at the sentencing hearing. *Id.* at ¶ 29. The statute requires the trial court find that (1) "the consecutive service is necessary to protect the public from future crime or to punish the offender" and (2) "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public," and any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single

prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4).

{¶ 35} Appellant does not identify any specific deficiency within the trial court's findings at the hearing, but instead argues in conclusory fashion that the trial court failed to "comply with the requirements of R.C. 2929.14" based on a single paragraph within the hearing transcript. The trial court did not recite the exact statutory findings into the record at hearing. The lack of such a recitation, however, is not a valid basis upon which to challenge a consecutive sentence on appeal, because compliance with the statute does not require a word-for-word recitation of these findings. *Bonnell* at ¶ 29. Instead, "as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Id.*

{¶ 36} Here, the trial court addressed the conduct in this case and found that the consecutive sentences were necessary to protect the public from "future instances." The trial court also addressed proportionality as it weighed and compared potential sentences in finding, "even the maximum sentences under the law would not be enough to properly punish you and to protect the public from future crimes." (Citations omitted) *State v.*

*Johnson,* 6th Dist. Sandusky No. S- 2021-Ohio-2254, ¶ 19-20 (proportionality analysis requires a trial court to "engage in a weighing process" and statutory finding does not require use of "any form of the word 'proportionate'"). Finally, the trial court addressed all three factors under R.C. 2929.14(C)(4)(a), (b), and (c), and found appellant committed the present offenses while under post-release control, found appellant engaged in multiple, separate offenses which the trial court had addressed as serious violations of the victims' freedoms, and found appellant had a criminal history that required consecutive sentences to protect the public from future crime, because when appellant had liberty, he was prone to commit crime.

{¶ 37} Upon review of the transcript, it is clear that the trial court did address each required finding at the sentencing hearing. Therefore, imposition of consecutive sentences complied with the law, and we find appellant's first assignment of error not well-taken.

## V. Conclusion

{¶ 38} For the forgoing reasons, we affirm the judgment of the Huron County Court of Common Pleas. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.
*See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.                    _____
                                                                            JUDGE

Christine E. Mayle, J.

                                            _____
Gene A. Zmuda, P.J.                                                          JUDGE
CONCUR.

                                            _____
                                                                            JUDGE


This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.